420 So.2d 524 (1982)
GREEN GIANT COMPANY, Plaintiff-Appellee,
v.
ADCOCK DISTRIBUTION COMPANY, Defendant-Appellant.
No. 14988.
Court of Appeal of Louisiana, Second Circuit.
September 20, 1982.
Gamm, Greenberg & Kaplan by Jack H. Kaplan, Shreveport, for defendant-appellant.
Egan, Cook & Titone by Joseph P. Titone, Shreveport, for plaintiff-appellee.
Before MARVIN, SEXTON and NORRIS, JJ.
MARVIN, Judge.
Adcock appeals a judgment on an open account, contending that the trial court should have found the account compromised by plaintiff's negotiation and endorsement of Adcock's check which was tendered "in full settlement of the account". We affirm.
In February 1979 Adcock advised all of its creditors that it was in financial straits and that it proposed to pay monthly, beginning April 1, 1979, a "small percentage" of *525 the outstanding account owed to each creditor and to take other steps to improve its financial position. Adcock paid plaintiff on three occasions through June 1, 1979, a total of $550.[1] After these payments were credited, Adcock owed plaintiff $6,645.79.
By letter of October 25, 1979, Adcock advised all of its creditors that it could not pay its indebtednesses and was contemplating bankruptcy. In this correspondence, as an alternative, Adcock offered to pay 15 cents on the dollar if all creditors would accept the offer. Plaintiff rejected Adcock's offer by a telegram on November 8, 1979, and demanded "100 [percent] payment."
On December 13, 1979, defendant's attorney wrote this letter to all creditors of Adcock:
"Pursuant to our letter of October 25, 1979, we are enclosing herewith our client's draft in full settlement of the account,"
and mailed it to plaintiff with a check "Within ten days of receipt PAY TO THE ORDER OF" plaintiff in the amount of $996.87.[2] The reverse of the check bore this typewritten notation:
"Endorsement constitutes full and final settlement of all accounts due through this date."
This correspondence was mailed to plaintiff at a Dallas post office box. Under plaintiff's agreement with a Dallas bank, the bank would open this box and would endorse the checks received "Credit to the Account of the Within Named Payee, FIRST NATIONAL BANK IN DALLAS". This agreement also stated that
"8. Any check bearing the typed or handwritten notation `payment in full' should not be processed, but forwarded to our Credit Department. Any check bearing a similar printed legend may be processed in the usual manner."
When the bank received Adcock's letter and check for $996.87, on January 3, 1980, the bank, contrary to its agreement with plaintiff, stamped the reverse of the check with its endorsement stamp and credited plaintiff's account. Plaintiff did not, however, credit defendant Adcock's account with the $996.87 and claimed from Adcock $6,645.79 before and after the bank endorsed the check. A letter of February 11, 1981, from plaintiff's attorney to Adcock reads:
"This firm represents Green Giant Company in the above captioned collection matter. Enclosed is a copy of invoices in support of the amount shown above and unless full payment is made within ten (10) days, suit will be filed for the principal amount due as directed by law, and if the full amount is not paid within thirty (30) days from receipt of this letter, judgment will be rendered against you for the principal amount due and costs in addition to reasonable attorney's fees as provided by an attached copy of LSA-R.S. 9:2781 entitled `Open Accounts; Attorney's Fees'.
"Also attached is a copy of a check in the amount of $996.87 made payable to Adcock Distributing Company c/o Gamm, Greenburg & Kaplan which represents refusal of that amount which was supposedly payment in full of the account. Please advise immediately."
The factual stipulation does not show the date that plaintiff's attorney "returned" the $996.87 check to Adcock and its attorneys which is mentioned in the above letter. Plaintiff filed suit on February 25, 1981.
*526 While it is true that the negotiation of a check tendered "in full settlement" of items disputed between a creditor and his debtor will be held to constitute an acceptance by the creditor of the debtor's offer, the negotiation under the circumstances of this case, clearly shown to have been made in error, should not be held to constitute an acceptance of the debtor's offer. Compare Charles X. Miller v. Oak Builders, Inc., 306 So.2d 449 (La.App. 4th Cir. 1975), and Wyatt v. Maryland Casualty Company, 160 So.2d 383 (La.App. 2d Cir. 1964).
By its definition, a compromise is an agreement between two persons, who, for the purpose of preventing or ending a lawsuit, adjust their differences in writing by mutual consent in the manner which they agreed on. C.C. 3071.
Consent is the communicated concurrence of intention resulting from a free and deliberate exercise of one's will. C.C. 1818, 1819. There is no legal consent where the communication is produced by error. C.C. 1779, 1819. See also C.C. 1829-1832, 1841, 53 Tul.L.R. 335. Here the plaintiff had rejected Adcock's recent offer to settle in full for 15 cents on the dollar and it was only through inadvertence that plaintiff's agent bank negotiated Adcock's check without the authority of plaintiff and contrary to plaintiff's written instructions. It is also shown that plaintiff, after and before Adcock's check was inadvertently negotiated, claimed $6,645.79 from Adcock, and that plaintiff sent its check to Adcock's attorneys for the $996.87 before filing suit.
Under these circumstances, there was no mutual consent to the contended compromise. C.C. 3071.
At appellant's cost, judgment is AFFIRMED.
NOTES
[1] The June 1, 1979, letter to all "creditors of Adcock" read:

"We are enclosing ... monthly distribution as [we] previously advised that we would do...
"Your forebearance and assistance is greatly appreciated."
Adcock's check was for "partial payment".
Adcock's letter of July 17, 1979, read in part:
"[T]here will not be a distribution of funds made to creditors this month as previously promised ...
"It is anticipated by the middle of August another distribution to creditors can be made... Your continued cooperation and forebearance is greatly appreciated."
[2] This amount is 15 percent of the $6,645.79 Adcock account.